# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:18-cv-125-MOC
## (3:14-cr-167-MOC-1)

| | | |
|---|---|---|
| **JASON MICHAEL BROWN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending is the Government's Motion to Seal Petitioner's Motion to Vacate and Exhibits. (Doc. No. 4).

## I.    BACKGROUND

### A. Petitioner is charged in state court will sexually abusing a three-year-old and, while on bond, shares thousands of images of child pornography using peer-to-peer software.

In January 2011, Petitioner Jason Michael Brown was arrested on state charges, including six counts of first-degree sex offense with a child for forcing a three-year-old child to perform oral sex on him. (Crim. Case No. 3:14cr167, Doc. No. 23 at ¶ 92: PSR; Doc. No. 42 at 15: Sent. Tr. I)).

Petitioner had shown the child images of child pornography to teach her how to perform oral sex on him, which he made her do on multiple occasions. (Id., Doc. No. 23 at ¶ 35; Doc. No. 42 at 35-36, 44). A computer seized during the investigation of these charges contained over 440 videos and tens of thousands of images of child pornography, including numerous files

1

depicting the sexual abuse and rape of infants, bestiality with a child, and other violent images. (Id., Doc. No. 23 at ¶ 38; Doc. No. 43 at 201: Sent. Tr. II) (noting the images were some of the most violent that the prosecutor had ever seen)).

In December 2011, while the state charges were pending, Petitioner downloaded and installed a peer-to-peer file sharing software program called "Gigatribe." (Id., Doc. No. 23 at ¶ 8). Users of Gigatribe can only share or download images from each other if they are invited into another person's group. (Id., Doc. No. 43 at 88-90). Petitioner used the name "Gigatribal007" on the site. (Id., Doc. No. 23 at ¶¶ 8-9). On December 11, 2011, an undercover FBI agent who was on Gigatribe asked Petitioner for his password so he could see the files that Petitioner had created on his Gigatribe account. (Id., Doc. No. 23 at ¶ 10). Petitioner provided the password, and the agent was able to view 1,045 images of child pornography. (Id. at ¶ 11).

Eight days later, an undercover FBI agent contacted Petitioner using Gigatribe and asked Petitioner to share his password. (Id. at ¶ 15). Petitioner did so, and the agent was able to view 828 images of child pornography. (Id. at ¶ 16). However, after Petitioner was unable to download any files from that agent, he deleted the agent from his list of friends, which prevented the agent from downloading any more files. (Id. at ¶ 37). Later that day, Petitioner again provided his password to an undercover FBI agent, who was able to view 2,797 images of child pornography. (Id. at ¶¶ 19-20). The following day, Petitioner also provided an undercover FBI agent with the password to his folder containing images of child pornography. (Id. at ¶ 24). On December 23, 2011, an undercover agent with the FBI made a fifth contact with Petitioner, who again provided access to child pornography contained in his Gigatribe folder. (Id. at ¶¶ 29-30). Agents were able to download images from Petitioner's folder, some of which depicted sexual assaults on children. (Id. at ¶¶ 12-13, 21-22, 26-27, 31-32).

Based on this information, agents obtained a search warrant for Petitioner's home. When agents executed the search warrant, Petitioner delayed opening the door, originally denied involvement in the offense, denied that he had used the name "Gigatribal 007," stated that the computer belonged to his niece, and attempted to blame his ex-wife. (Id., Doc. No. 43 at 197-98). During the search, officers found a laptop that had been hidden. (Id. at 198). It was running a wiping software program, and a good portion of the hard drive had already been erased by the time officers found it. (Id.). However, a forensic examination of the computer linked the computer to Petitioner and his use of Gigatribe. (Id.).

**B. Petitioner pleads guilty to transporting and possessing child pornography.**

A grand jury indicted Petitioner, charging him with three counts of aiding and abetting the transportation of child pornography, in violation of 18 U.S.C. §§ 2252A, 2, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (United States v. Brown, No. 3:14CR35 (W.D.N.C. Feb. 19, 2014), Doc. No. 1: Indictment). Petitioner retained attorneys C. Melissa Owen and Noell Tin to represent him. Petitioner moved to suppress the evidence but eventually withdrew his motion to suppress and agreed to plead guilty to a two-count Bill of Information charging him with transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1) (Count One), and possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two). (Id., Doc. No. 40; Crim. Case No. 3:14cr167, Doc. Nos. 1-2).

As part of Petitioner's plea agreement, the Government agreed to dismiss the four charges in the Indictment. (Crim. Case No. 3:14cr167, Doc. No. 2 at ¶ 2). The parties jointly recommended to the Court that a base offense level of 22 applied, that Petitioner's plea was timely entered for purposes of acceptance of responsibility, that either party could argue in favor of other enhancements or reductions, and that either party could seek a departure or variance, but

Petitioner would not request a sentence of less than 120 months of imprisonment. (<u>Id.</u> at ¶ 7). Petitioner agreed that he understood the maximum penalties associated with his offenses, including the possibility of a lifetime term of supervised release, as well as the fact that his sentence had not yet been determined and that "any estimate of the likely sentence is a prediction rather than a promise" (<u>Id.</u> at ¶¶ 4, 6). He conceded that he could be sentenced up to the statutory maximum and that he could not withdraw his plea as a result of the sentence imposed. (<u>Id.</u> at ¶ 6). Petitioner agreed to pay full restitution to all victims directly or indirectly harmed by his relevant conduct. (<u>Id.</u> at ¶ 8). Petitioner also stipulated that he had read and understood the factual basis and that, other than the facts to which he objected, it could be used to determine his guideline range and sentence. (<u>Id.</u> at ¶ 14). Additionally, Petitioner agreed to waive the right to challenge his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (<u>Id.</u> at ¶¶ 18-19).

During the plea hearing, Petitioner affirmed that he had reviewed the charges with his attorneys and that he understood the charges, as well as the maximum penalties for the offenses. (<u>Id.</u>, Doc. No. 41 at 10-11: Plea Tr.). Petitioner testified that he understood that the Court would not be able to determine his sentence until after a PSR had been prepared, that he could receive a sentence higher or lower than the guidelines sentence, that the Court could order restitution, and that he would not be able to withdraw his plea if his sentence was more severe than he expected. (<u>Id.</u> at 11-12). Petitioner affirmed that he was guilty of the charges. (<u>Id.</u> at 13-14). The Government reviewed the terms of the plea agreement, including Petitioner's agreement to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, and Petitioner testified that he understood and agreed to these terms. (<u>Id.</u> at 14-18).

Petitioner affirmed that no one had threatened or intimidated him to plead guilty, that no one had made any "promises of leniency or a light sentence" to get him to plead guilty, that he had had sufficient time to discuss any possible defenses with his attorneys, and that he was satisfied with their services. (Id. at 19). The magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. (Id. at 21).

A probation officer prepared a PSR, recommending that Petitioner's base offense level was 22 and that he should receive: a two-level enhancement for material involving prepubescent minors; a five-level enhancement for distribution with the expectation of the receipt of a thing of value; a four-level enhancement for material that portrays sadistic or masochistic conduct or other depictions of violence; a five-level enhancement for engaging in a pattern of conduct involving the sexual abuse or exploitation of a minor; a two-level enhancement for use of a computer; and a five-level enhancement because the offense involved more than 600 images. (Id., Doc. No. 23 at ¶¶ 49-55). Allowing a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 42. (Id. at ¶¶ 73-75). The probation officer found that Petitioner was in criminal history category I and that this placed his guideline range at 360 months to life. (Id. at ¶¶ 90, 116). Because the statutory maximum on Count One was 240 months and the statutory maximum on Count Two was 120 months, the maximum sentence that could be imposed was 360 months. See (Id. at ¶ 116). Petitioner objected to the PSR, arguing that the distribution and pattern-of-activity enhancements should not apply and moved for a downward variance to 120 months of imprisonment. (Id., Doc. No. 23 at 21: PSR addnm.; Doc. No. 27 at 14: Sent. Memo.).

**C. This Court varies downward after hearing evidence regarding Petitioner's conduct and psychosexual evaluation.**

At sentencing, Petitioner testified that the answers that he had given during the plea hearing were truthful and that he would give the same answers if asked those questions again. (Id., Doc. No. 42 at 4-5). Petitioner again admitted his guilt of the charges. (Id. at 5). This Court then affirmed the magistrate judge's finding that Petitioner entered his guilty plea knowingly and voluntarily. (Id.).

To rebut Petitioner's argument that the pattern-of-activity enhancement should not apply, the Government presented evidence from the certified child forensic examiner, who had interviewed the child victim, and the nurse practitioner, who had examined the child victim. (Id. at 9-49). The Government also played a video of the child victim's interview. (Id. at 16-18).

Joseph Zadik, a special agent with the FBI and the case agent on Petitioner's case, helped execute the search warrant at Petitioner's house. (Id. at 50-51). Zadik testified that when he spoke with Petitioner, Petitioner denied that child pornography would be found on the computer in his home, stated that he did not know who owned the computer where pornography was found, but then said that it was his niece's computer, and stated that he did not know if he had an account called "Gigatribal007." (Id. at 52-54). Zadik also testified that Petitioner suggested that his wife could be responsible for the pornography. (Id. at 55). According to Zadik, Petitioner told him that he had attempted to deliver some information to the FBI in Charlotte about ten years earlier. (Id. at 51). Petitioner also indicated that he had attempted to contact the Charlotte Mecklenburg Police Department. (Id. at 52). Zadik investigated whether there were records of any contact between Petitioner and the FBI or CMPD, and found that Petitioner had not filed any substantive complaints. (Id.). This Court found that the child victim's testimony was credible and sustained the pattern-of-activity enhancement. (Id. at 84-85).

Petitioner's stepmother testified that Petitioner had had an altercation with someone who was looking at child pornography at a library, that Petitioner had said that he would try to stop this type of thing, and that on another occasion he had mentioned that he was going to go to the FBI to see if they could help him. (Id. at 56-58). Petitioner's stepmother testified that her phone records for Petitioner's phone showed that a four-minute and an approximately eight-minute call had been placed to a CMPD number. (Id., Doc. No. 43 at 188-89: Sent. Tr. II)). The Government checked CMPD's records, but there was no record of Petitioner making any reports. (Id. at 190).

Agent Zadik testified that the Charlotte office had received multiple leads from other field offices regarding Gigatribal007. (Id., Doc. No. 42 at 95). The Government played recordings of agent interactions with Gigatribal007 on December 19, 2011, and December 23, 2011. (Id. at 96-97, 101-02). John Letterhos, a special agent with the FBI, testified as to interactions with Gigatribal007 in which Petitioner exchanged the password to his files so that an agent could download them and in which Petitioner asked for the agent's password to see his images and attempted to download files. (Id. at 107-12). The recording and testimony showed that Gigatribal007 disappeared from the agent's contact list after Petitioner attempted to download a file from the agent titled "tori_anal-8.jpg," but was unable to download anything. (Id. at 98-99, 112). This Court sustained Petitioner's objection to the five-level enhancement for distribution with the expectation of receipt and instead applied the two-level enhancement for distribution. (Id. at 121-22).

At the continuation of the sentencing hearing, Elizabeth Griffin, an expert in sexual offense behavior, testified regarding her evaluation of Petitioner. (Id., Doc. No. 43 at 133, 139). She testified that she provisionally diagnosed Petitioner with schizoaffective disorder with

bipolar subtype, including significant delusions and disorganized speech. (<u>Id.</u> at 143-45).

Griffin testified that Petitioner's representation that he was trying to stop child pornography was

consistent with his "obsessional thinking." (<u>Id.</u> at 148). Based on Petitioner's answers to one of

the tests that Griffin administered, she provisionally diagnosed him with histrionic personality

disorder with narcissistic features. (<u>Id.</u> at 175). She did not believe that Petitioner met the

criteria for pedophiliac disorder; however, she testified that often times the motivation to molest

is not related to pedophilic interests. (<u>Id.</u> at 149, 154-55). She assessed Petitioner to have a low

to moderate risk of recidivism, but noted that it was critical that he obtain mental health

treatment. (<u>Id.</u> at 156, 160). Griffin testified that child pornography offenders who commit a

sexual contact offense are significantly more likely to re-offend. (<u>Id.</u> at 181).

Petitioner allocuted and continued to maintain that he had brought information to the FBI

and that he had not sexually abused the child victim. (<u>Id.</u> at 233-38). This Court varied down by

two levels, citing the defendant's mental health issues and his use of a computer, which reduced

the guideline range to 210-62 months of imprisonment. (<u>Id.</u> at 242-43). This Court sentenced

Petitioner to 240 months of imprisonment on Count One and to 120 months of imprisonment on

Count Two, with the sentences to run concurrently. (<u>Id.</u>). The Court noted that it was not

sentencing Petitioner at the low end of the guidelines due to the seriousness of the crime, the

large number of "sick images, dangerous scary images" that Petitioner had downloaded, and the

fact that Petitioner had used some of these images to help him molest the child victim. (<u>Id.</u> at

243). The Court left open the issue of restitution for 90 days, and later amended the judgment to

require Petitioner to pay $10,000 in restitution. (<u>Id.</u>, Doc. No. 29 at 5, Doc. No. 33 at 5-6).

Petitioner appealed. His appellate counsel filed a brief pursuant to <u>Anders v. California</u>,

386 U.S. 738 (1967), but questioned whether this Court had erred in applying the five-level

enhancement for engaging in a pattern of activity. <u>United States v. Brown</u>, 680 F. App'x 251, 251 (4th Cir. 2017). The Fourth Circuit affirmed, holding that Petitioner's sentence was procedurally and substantively reasonable. <u>Id.</u> at 251-52. Within a year of this decision, Petitioner filed the present motion to vacate, arguing that his attorneys provided ineffective assistance. The Government filed its response on May 15, 2018. (Doc. No. 3). Along with the response, the Government has filed a "Motion to Seal Petitioner's Motion to Vacate and Exhibits." (Doc. No. 4). Petitioner filed his Reply on July 10, 2018. (Doc. No. 7).

Before addressing the Section 2255 petition itself, the Court first addresses Petitioner's motion to seal. The Government has requested the Court to seal Petitioner's motion to vacate and attached exhibits to prevent the disclosure of information previously filed under seal, namely because the motion to vacate and exhibits contain identifying information regarding a child victim of a sexual abuse. The Court will grant the motion to seal for the reasons stated in the Government's motion.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. <u>See</u> <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

To prevail on a theory of ineffective assistance of counsel, Petitioner must establish that his attorney's performance fell below an objective standard of reasonableness, judged "from

counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). He must also establish prejudice in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because Petitioner pleaded guilty, to establish prejudice affecting his conviction, he must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, 137 S. Ct. 1958, 1964 (2017).

In evaluating claims under Section 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and Section 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005); see Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) (holding a defendant is bound by his representations during the plea colloquy "[a]bsent clear and convincing evidence to the contrary").

**A. Petitioner's pre-plea claims of ineffective assistance of counsel.**

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956

F.2d 1290, 1294-96 (4th Cir. 1992); <u>accord</u> <u>United States v. Torres</u>, 129 F.3d 710, 715 (2d Cir.

1997); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992); <u>Smith v. Estelle</u>, 711 F.2d

677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant."  <u>Burket v. Angelone</u>, 208

F.3d 172, 190 (4th Cir. 2000) (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)).

**1. Petitioner's contention that his attorneys were ineffective for failing to secure a more favorable plea agreement.  (Claim 1)**

Petitioner first argues that his attorneys provided ineffective assistance by failing to

secure a more favorable plea agreement.  Specifically, he contends that he was offered a 5- to 17-

year plea deal at the time of the suppression hearing and that he instructed his attorneys to accept

the offer, as long as it included a written agreement from his ex-wife allowing his children to

have visitation with his side of the family.  (Civ. Doc. No. 1 at 4).  Petitioner asserts that his ex-

wife agreed to the deal, that the suppression hearing was recessed[1] so that the parties could reach

an agreement, and that he agreed to accept the plea, also subject to his attorneys arguing that his

case was atypical and fell outside the heartland of cases.  (<u>Id.</u> at 4-6).  However, when his

attorney presented the plea agreement for Petitioner to sign, Petitioner refused because it did not

contain a visitation agreement from his ex-wife.  (<u>Id.</u> at 6).

Petitioner has waived this issue.  Petitioner's decision to reject the first plea offer

occurred before his decision to plead guilty to the Bill of Information.  Petitioner does not

contend that his guilty plea was involuntary,[2] and such contention would be belied by his sworn

---

[1]  There was no suppression hearing.  Although a suppression hearing was scheduled for September 15, 2014, Petitioner withdrew his motion to suppress on September 14, 2014, after he had pleaded guilty.  <u>See</u> (Crim. Case No. 3:14cr35, Doc. Nos. 40-41).

[2]  Petitioner suggests for the first time, in his Reply, that his plea was involuntary, (Doc. No. 7 at 12), but this was not his original claim and, in any event, this claim is wholly without merit.

testimony at the plea hearing. Petitioner also does not allege that but for counsel's conduct he would not have pleaded guilty, and the relief that he seeks is not to proceed to trial, but rather to be resentenced. See (Doc. No. 1 at 37). Because Petitioner's knowing and voluntary guilty plea occurred after counsel's alleged failure to secure a plea deal with the addition of Petitioner's counter-proposals, Petitioner's claim of pre-plea ineffective assistance of counsel is waived by his guilty plea and will be dismissed. See Fields, 956 F.2d at 279.

This claim also lacks merit because Petitioner rejected the plea offer, and he has not shown that it is reasonably probable that the additional terms that he proposed would have been incorporated into the plea agreement. Even accepting his assertion that his ex-wife had agreed to visitation, Petitioner has not shown that the Government would have accepted his counteroffer and incorporated an unrelated, non-party visitation agreement into its plea agreement, nor has he shown that this Court would have accepted a plea conditioned on such an agreement. Accordingly, Petitioner has not shown that his attorneys' performance was deficient, nor has he shown prejudice. See Strickland, 466 U.S. at 687-88, 694.

**2. Petitioner's claim that his attorneys failed to adequately investigate his case to show that he had no criminal intent. (Claims 2 & 3)**

Petitioner next contends that his attorneys failed to adequately investigate his case to show that he had no criminal intent. By pleading guilty, he waived any pre-plea claims that his attorneys failed to adequately investigate his case. See Smith, 711 F.2d at 682 (holding that by pleading guilty defendant waived his claims of ineffective assistance relating to counsel's alleged failure to investigate). Accordingly, this claim will be dismissed.[3]

---

[3] Although Petitioner lists seven claims in his motion to vacate, these claims overlap. Because Petitioner's assertion that his attorneys failed to investigate information that should have been included in the PSR relates to sentencing, that issue is discussed below.

Petitioner's assertion that his attorneys failed to adequately investigate his case and to show that he had an affirmative defense because he had no criminal intent is also without merit. See (Civ. Doc. No. 1 at 7, 10, 13-18). To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

Petitioner asserts that he attempted to report the illegal activity before his arrest and that his attorneys should have argued that he had no criminal intent. (Civ. Doc. No. 1 at 9-11). Petitioner argues that he only transmitted images to known FBI agents to download, that he called Chris Perez of the cybercrime unit a month before "the criminal act," and that he had set up a website blog exposing illegal activity and had emailed local media about it. (Id. at 8-9). Petitioner asserts that his efforts to expose the operation failed, so he tried to find FBI sting operators online. He contends that from December 19 to December 31, 2011, he used Gigatribe to track down FBI agents, and that he then deleted all of his user contact information, typed a derogatory message to seekers of child pornography, and ceased using Gigatribe. (Id. at 10). He contends that he deleted all of the illegal material on his computer, but kept it on his hard drive "so that the authorities could have access." (Id. at 11).

Petitioner's assertion that he did not have the requisite intent, because he thought that he was helping to curb illegal activity by providing a password to internet users that he believed were officers so that the users could access a folder containing numerous images of violent child

pornography, is meritless.  Other than his own self-serving statements, Petitioner offers no evidence in support of this claim.

Moreover, Petitioner's interactions with law enforcement officers contradict his assertion. During the execution of the search warrant, Petitioner denied having any knowledge of child pornography and attempted to cast blame on his ex-wife.  And during his on-line interactions with undercover agents, he shared password protected and organized files, he attempted to download images, and he removed a contact when he could not download images from that agent's files.  Additionally, the vast number of images, including violent images, and the presence of images on more than one computer show that his contention that he was only dealing in child pornography to help law enforcement is not credible.

Finally, even if Petitioner could have shown that his intent was to assist law enforcement, this would not have provided an affirmative defense.  To establish innocent intent, a defendant must show: (1) that he "honestly believed that he was acting in cooperation with the government"; and (2) the official "upon whose authority the defendant relied possessed actual authority to authorize his otherwise criminal acts."  United States v. Fulcher, 250 F.3d 244, 253 (4th Cir. 2001).  Here, Petitioner does not assert that any official, let alone someone with actual authority, authorized him to collect and distribute child pornography.  Therefore, any misplaced belief that he held was not a defense to his conduct.  See United States v. Parker, 267 F.3d 839, 844-45 (8th Cir. 2001) (rejecting child pornography defendant's contention that there was insufficient evidence of intent to sustain his conviction because he was attempting to assist law enforcement); United States v. Kelly, 718 F.2d 661, 665 (4th Cir. 1983) (holding a mistake of law is not a defense to a criminal act).

In sum, because Petitioner's intent argument lacks merit, he can show neither deficient performance nor prejudice from counsel's alleged failure to investigate and pursue this as an affirmative defense.

**B. Petitioner's claims of ineffective assistance at sentencing.**

**1. Petitioner's claim that he was acting in support of law enforcement and his case fell outside the heartland. (Claims 2, 3, & 7)**

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner first argues that his attorneys provided ineffective assistance at sentencing by failing to ensure that the PSR reflected relevant facts and by failing to present mitigating evidence that his case fell outside the heartland of cases. (Civ. Doc. No. 1 at 7-11, 13-18, 32). In particular, he asserts that counsel should have shown that Petitioner was acting to expose illegal activity by investigating and obtaining witness statements to show that he created the account "Gigatribal007" to find FBI agents and to turn over a system-wide source. (Id. at 7-11, 15-18). Petitioner contends that his attorneys should have obtained a statement from Perez to rebut the testimony of Agent Zadik that Petitioner had not filed any complaints. (Id. at 8-9, 16-17). Petitioner also argues that his attorneys failed to present unspecified letters, affidavits, and witnesses supporting his prior "risky and dangerous conduct in helping others and community." (Id. at 11).

Counsel did present evidence in support of Petitioner's claim that he had intended to help law enforcement. At sentencing, defense counsel called Petitioner's stepmother to testify as to Petitioner's statements that he was providing information to law enforcement and to identify

calls made from Petitioner's phone to CMPD. Defense counsel also questioned Griffin regarding Petitioner's assertion that he was trying to stop child pornography. (Crim. Case No. 3:14-cr-167, Doc. No. 43 at 148). Other than Petitioner's speculation that his counsel should have obtained a statement from Perez (despite the fact that there was no evidence that Petitioner had filed a report with CMPD), Petitioner does not make any showing of what evidence he contends counsel could have obtained. Accordingly, this claim will be dismissed as conclusory, see United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (affirming dismissal of Section 2255 claims based on vague and conclusory allegations), and because Petitioner has not shown deficient performance, see Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding a defendant claiming ineffective assistance of counsel based on an uncalled witness should make a proffer of testimony from the uncalled witness). Moreover, he cannot show prejudice because the facts show that his contention that he was trying to help law enforcement was not credible, particularly in light of his initial denials to law enforcement officers, and, in any event, an unsupported belief that one is trying to help law enforcement is not a defense to Petitioner's crimes. See Fulcher, 250 F.3d at 253.

Petitioner also asserts that he provided his attorneys with documents and disks,[4] but that his attorneys excluded a three-page attachment from the PSR. (Id. at 7). The PSR is a document created by a probation officer, not defense counsel, so counsel cannot be deficient for any failure to include an attachment to it. Although counsel could submit attachments to objections to the PSR or a sentencing memorandum, Petitioner has not identified the content of the three-page

---

[4] Petitioner asserts that a number of "files" and "disks" have not been returned to him, but he does not indicate the specific content of these items or establish how they would meet his burden to show deficient performance and prejudice. See, e.g., (Civ. Doc. No. 1 at 14).

document, nor has he established its relevance to sentencing. Accordingly, this claim is dismissed as conclusory, see <u>Dyess</u>, 730 F.3d at 359-60, as well as because he cannot show deficient performance or prejudice where the relevance or potential effect of this purported evidence has not been identified.

Petitioner next contends that if his attorneys had shown that his case was outside the heartland, he would not have received an "upward departure" to serve a life term of supervised release. (<u>Id.</u> at 32). Petitioner's life term of supervised release was not an upward departure. Under U.S.S.G. § 5D1.2(b)(2), p.s., the statutory maximum term of supervised release is recommended for sex offenses. Moreover, he has not shown that his case fell outside of the heartland in any mitigating way, nor has he shown there was a reasonable probability that this Court would have imposed a lower term of supervised release, particularly where he committed the instant offenses while on bond for the contact offenses. <u>See</u> <u>Royal</u>, 188 F.3d at 249. Accordingly, Petitioner has not shown deficient performance or prejudice.

## 2. Petitioner's claims that his attorneys failed to present mitigating evidence. (Claim 4)

Petitioner next asserts that his attorneys failed to submit mitigating evidence, contending that the child victim was coached into telling fictitious stories of abuse. (Doc. No. 1 at 19). He contends that his attorneys should have questioned the veracity of the complaint of abuse and shown that the form on which it was filed was not properly filled out. (<u>Id.</u> at 21-23). He asserts that his attorneys should have called the child victim and his attorney in the state proceedings as witnesses at sentencing. (<u>Id.</u> at 21). Petitioner also contends there was a witness who heard someone state that she was setting him up to go to jail. (<u>Id.</u> at 23).

Complaints of ineffective assistance based on uncalled witnesses are disfavored because the presentation of witness testimony is a matter of strategy and the nature of such testimony is speculative. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner does not identify the alleged witness who overheard a statement regarding a setup, nor does he provide any information from this alleged witness, explain how this was relevant to his sentencing, or indicate the witness's willingness or availability to testify.[5] He does not offer any information regarding the substance of the proposed witnesses' testimony, other than asserting that the child victim would not testify consistently with the earlier videotaped interview, nor does he indicate whether the alleged witnesses were willing to testify at the sentencing hearing. Petitioner's contention that the child victim or his prior attorney would have been permitted to testify and would have provided testimony that had a reasonable probability of changing the sentencing outcome is entirely speculative. Accordingly, this claim also should be dismissed as conclusory, see Dyess, 730 F.3d at 359-60, as well as for the failure to show deficient performance or prejudice, see Bassette, 915 F.2d at 940-41; Alexander, 775 F.2d at 602.

**3. Petitioner's contention that his attorneys were ineffective for admitting evidence regarding his mental state and this Court relied on this evidence to vary downward in sentencing him. (Claim 5)**

Petitioner next asserts that his attorney should not have allowed "erroneous" and "skewed" facts regarding his mental state into evidence because this damaged his credibility. (Civ. Doc. No. 1 at 25). He argues that the psychological report was flawed because it rested on inaccurate information. (Id. at 25-27).

---

[5] Although he cites to Exhibit P, no Exhibit P is included with his motion.

Petitioner cannot show that it was objectively unreasonable for his attorneys to present evidence regarding his mental state to the Court, particularly given the nature of his offenses and the information in his personal history. See Strickland, 466 U.S. at 687-88. Nor can he show prejudice, because this Court cited the evidence of his mental health issues in deciding to vary downward from the guideline range. (Crim. Case No. 3:14-cr-167, Doc. No. 43 at 242-43).

Finally, the Court notes that the record shows that counsel provided effective representation by convincing the Court to sustain two objections to the applicable offense level and to vary downward by two levels in imposing sentence. Accordingly, Petitioner's claims of ineffective assistance of counsel at sentencing will be dismissed. See Royal, 188 F.3d at 249.

### C. Petitioner's restitution claim. (Claim 6)

Petitioner next argues that his attorney failed to challenge the amount of restitution and asserts that there were no losses because the FBI downloaded the images. (Civ. Doc. No. 1 at 29). This claim will be dismissed because it is not cognizable on collateral review. Section 2255 provides that:

> A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added). "A reduction in restitution is not a release from custody." Blaik v. United States, 161 F.3d 1341, 1342 (11th Cir. 1998) (collecting cases). "[I]t is well-settled that § 2255 relief may not be granted when the defendant challenges only a fine or restitution order." United States v. Coward, 230 F.3d 1354 (4th Cir. 2000) (unpublished table decision). Because restitution is a financial penalty, not a physical constraint on liberty, Petitioner may not challenge the order of restitution in a Section 2255 proceeding. See United

States v. Hudgins, 201 F. App'x 142, 143 (4th Cir. 2006); but cf. United States v. Luessenhop, 143 F. App'x 528, 531 (4th Cir. 2005) (allowing, without discussion of propriety of proceeding under Section 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less).

The fact that Petitioner is alleging ineffective assistance with respect to restitution does not change this result, because he is still seeking to challenge a non-custodial restitution order. See Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir. 2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under Section 2255); Carpenter v. United States, 2015 WL 5254185 (W.D.N.C. 2015) (unpublished) (holding "Petitioner's assertions that his counsel provided ineffective assistance with respect to the order of restitution are not cognizable under § 2255"). Therefore, Petitioner's assertions that his counsel provided ineffective assistance with respect to the restitution order will be dismissed because they are not cognizable under Section 2255.

In any event, Petitioner's assertion that his counsel provided ineffective assistance regarding the order of restitution lacks merit. Restitution is mandatory under 18 U.S.C. § 2259 and U.S.S.G. § 5E1.1, and Petitioner's possession of the images rendered him liable for restitution, even without considering his distribution of the images. See United States v. Beckmann, 786 F.3d 672, 683 (8th Cir. 2015). Moreover, he has made no showing that the amount of restitution is not reasonable. See (Doc. No. 31).

## IV.     CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion to Seal Petitioner's Motion to Vacate and Exhibits. (Doc. No. 4), is **GRANTED**. The Clerk is respectfully instructed to replace on the docket Petitioner's Motion to Vacate and attached exhibits with the Government's redacted versions of these documents, attached to the docket as Doc. Nos. 4-1 and 4-2.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 16, 2018

Max O. Cogburn Jr.
United States District Judge